visual body cavity search, a search that is performed routinely on every inmate entering or leaving a maximum security area within the Wade Correctional Center. We are here today because inmate Woodfox demands to be treated differently from every other inmate similarly situated at that facility. The district court would create this special exemption in favor of Woodfox, who happens to be in maximum security because he was convicted of using a contraband weapon to murder a security officer years ago. In our opinion, the district court did not have opinion to address this issue, and upon addressing it, they applied the standard incorrectly when they did so. I'd like to address those two issues separately, beginning with the jurisdictional issues. The state actually has three different challenges to the jurisdiction. The first one is the fact that this unconstitutional challenge to the search was not pled in this lawsuit. The underlying lawsuit is a due process lawsuit that was filed in 2000 by Woodfox and two other inmates alleging that his due process rights were violated because he was housed in a single cell, what's known as closed cell restriction, or CCR, for many years without adequate due process review understanding. Over the years, it's melded and evolved into other claims, but it has never, nowhere, involved an unconstitutional search claim. It's never involved a Fourth Amendment claim. Those claims have not been part of the litigation. Woodfox now claims that it's part and parcel to the matter that's pending before the court, but it's just not. Has this case been pending before Judge Brady the whole time? No. He only took it, he took it, I wasn't involved until the mid-2000s, and he took, I forget who he took it over from. Judge Polozo, I think, had this favor. Likely. I believe this is the one Judge Polozo had for ever, literally. No one in the room was here until, involved in the case until about 2005, I think, something like that. Well, we can figure it out, but my recollection is I think he had it for a long time, this one and a bunch of those prison cases, because he was the active judge, anyway. I was involved in many of those cases, but not this one, Your Honor. Nothing in the complaint suggests facts that would control the disposition of the constitutional search challenge now before the court. Well, set the context a little bit more. I mean, we've got this longstanding litigation, we've got this consent decree, right? In state court. In state court, dealing with this whole parameter. It gets a little squirrely, figuring out, with this protracted litigation in the state court piece, et cetera, exactly this carve out here, which I guess goes maybe to your argument about no jurisdiction, is it? Yes, Your Honor. Let me address that then. This very claim, this constitutional challenge to the visual body cavity search, that's what's before the court today. This challenge was litigated in state court years ago. Nobody disputes the fact. It was the same claim. It was a challenge to the use of visual body cavity searches when inmates moved within the prison. It was litigated, there was a hearing, there was extensive negotiations. The state actually developed a whole set of regulations. This is regard to, I mean, the consent decree is titled Woodfox versus somebody, right? Oh, yes. So it's not just a global, not even global, it pertains, it may be global, but it names him specifically. It was Albert Woodfox and one other inmate, but he was the first named, he was the instigator. He was the one who initiated this action in state court. And again, it was litigated, the state actually developed a whole set of regulations governing how visual body cavity searches can be conducted. That procedure is essentially still in place today, the same procedure. That's something about reasonable suspicion, does it not? It does. It allows, it describes when searches may be conducted with and without reasonable suspicion. It seemed to me that had they gone back into state court, they might have had a plausible argument for modifying the searches to which he's now subjected. Sure. That's right, Judge. Judge, no one has contested that the state court judgment remains binding and effective today. What we've contended all along is that the state court judgment, by its express term, says that if it's going to be modified or enforced, it happens in state court. And it happened, the judgment was entered a long time ago, but the reason we're here today is that last year, Woodfox came into federal district court and filed a motion for temporary restraining order. It's not in the excerpts, but it's, the site of the record I think is 7101. In that temporary restraining order, which I urged the court to look at, Woodfox blasted on and on the fact that there's an existing state court judgment that controls how searches are supposed to be conducted. In other words, it's really clear to him and to the district court and to the state that that state court judgment is binding and in effect today. That governs how it can, in itself, guys, how it can be modified or amended. We cited the Haspel case by this court, which we believe is on point. Again, in that case, landowners sued the levy board for a money judgment, which was entered in state court by consent judgment, in state court, and years later, the landowners tried to sue in federal court, urging under a takings claim that, you know, we want you to, we want to make them pay what they agreed to pay. And this court, without much trouble, said, your remedy's in state court. That's where you got your relief. The claim that you asserted has merged and been extinguished by, into that consent judgment in state court, and that's your remedy. The district court would distinguish Haspel by saying that in Haspel, there was a separate stand-alone release document that the landowners signed, and therefore, you know, that was why that suit was given, that judgment was given preclusive effect. But, Your Honors, the consent judgment in this case, it was a settlement. The parties came into court, and the state court pleadings are in the record, and it's very clear the consent agreement itself says the parties come into court, they ask the court to dismiss the lawsuit and substitute in its place this judgment. What more could he have done to express his intent to release his claims? Imagine if he had come back, if he had settled this Fourth Amendment claim in state court in 1978, and then come back in two months later or a year later and say, well, yeah, I know I settled my Fourth Amendment claim in state court, but now I want to litigate it again in federal court. I mean, it would have been nonsensical. Of course it's bound by that. Finally, the last jurisdictional argument I wanted to reference was our full faith and credit argument. In that argument— I'm sorry, slow down just a little bit. Haspel is what we're calling a merger doctrine, correct? Yes. It doesn't—Haspel itself has logic that you've described correctly, but does it—what authority does it cite? And related to that is, is that a ruling that then the federal court lacked jurisdiction? Is it a jurisdictional bar? We interpret Haspel as a jurisdictional bar because the claim has been extinguished and merged into state court judgment. There's no longer a claim to be enforced. There's no longer a claim to be enforced, which arguably is slightly different from the full faith and credit because with full faith and credit, if they have the right to assert the claim in federal court, we would then— and again, there's never been a complaint asserting it, so we haven't filed an affirmative defense. But we would respond by saying that's barred by res judicata because there's— You made both arguments. We did. We did, Judge. You were about to get to the second. Yes. Okay. And that one seems to have more settled law applicable to it. Would you agree with me? I mean, we've got Haspel, which may be right on point, but it doesn't cite much authority and it's a jurisdictional bar based on a merger doctrine, whereas now what you're about to get to is Louisiana preclusion law or res judicata. Right. And that's got a lot of law. Yes. We cited Haspel because we thought it was pretty close factually and otherwise. But the full faith and credit argument, of course, it has the 1738, it has federal law behind it, which says if there's a final state court judgment, and we cited any number of state court cases that's— you know, and federal court cases that say you determine the preclusive effect by reference to state law. Three identities, correct? Right. Identical parties. And again, it's Woodfox and the state. And by the way, it's the state of Louisiana. It wasn't LSP or anything like that. The parties are the same. I think the argument is that Haspel is particularly applicable where you've got continuing jurisdiction. That's right, Judge. In Haspel, in this case— I mean, because this is—it's a final judgment, but it is one that expressly maintains continuing jurisdiction in another court. So I don't see how you can go around that. But—and that interests me. Read me, you probably know by heart. What's the language in either the consent degree or the final judgment that contemplates foreclosing future litigation or— It says the court maintains continuing jurisdiction. Yeah, can you— The jurisdiction of this cause is to be retained by the court for the purpose of making such other and further orders as may become necessary. That's in the consent judgment and in the order implementing it itself. Okay. And so—and yet the district court said somehow that didn't reflect parties' intent to foreclose future litigation? What they had in Haspel that apparently they did not have in the Woodfox state court action was a separate standalone release document. I see. Now— But a lot of these arguments would be very similar to your preclusion argument, wouldn't they? I mean, the identities don't seem to be at issue. The issue really is, did the parties intend a future consequence? Did they intend to restrict the forum that one could seek to enforce the consent degree in? Well, that was specifically stated in their agreement. I mean, they couldn't have been more clear about it. But again, Judge, even more clear than that is the fact that, again, if you go back and look at the temporary restraining order by which Woodfox brought this cause to this court he alleges that there's a binding state court judgment and he wants to enforce it against the state. Well, Judge, we'd like to enforce it because that judgment provides— you know, those are the rules that—you know, we're bound by it. We understand we're bound by it, but he is too. And we're bound by it. And among other things, that judgment provides that you enforce it in state court, that it's retained jurisdiction over it. Let me, if I could, briefly talk about the standard for reviewing conduct of prison officials. Even if the Woodfox Fourth Amendment claims were before the district court, that court failed to give deference owed to prison officials. Bellevue-Wolfish and its jurisprudence are controlling here. Bellevue-Wolfish is the leading case, of course. That jurisprudence, we think, creates a basic two-part test, if you will. The first is that the court is supposed to look at the prison regulation procedure, in this case, the search procedure, and determine whether there is, in fact, a legitimate penological basis for that. That's the first step. The second step is, if there is a legitimate penological interest in the action being taken by the prison officials, then it's hands off. The courts don't interfere unless it can be shown that the prison officials were using that legitimate penological interest as a pretext or exaggerated to respond to something else. In this case, there's no question that there's a legitimate basis for these regulations. The district court found that. No one is contesting that control of contraband is a critical issue in state prisons, in any prisons, and that it has to be controlled. The way to do that is through contraband searches. Visual body cavity searches have been upheld in this court and many other courts over the years. There's no question that the regulation is appropriate, and there's no question, in our view, that if there's any case in which deference should be given to prison officials, this is that case. I would ask the court to consider the following. First, Wade is a maximum security prison, over 1,200 inmates, more than half of those inmates are classified maximum security themselves. Contraband is a huge problem in all prisons, but particularly a prison like Wade. Contraband is a particularly great problem in the cell blocks at Wade. That was testimony from the ward at our hearing, and Woodfox, of course, is living in one of those cell blocks. This is not just a finding by the prison officials saying that this is an appropriate response to contraband. We had a corrections expert with decades of experience in some of the worst prisons in the country say, this is the right response, this is a necessary response, this is an appropriate response to controlling contraband. Finally, all inmates at Wade are subjected to the same identical search when they enter or leave segregation. Woodfox is treated no differently. There's never been an allegation Woodfox denied ever being abused or harassed or otherwise mistreated in the process of these. So the district court did not find that these strip searches were an exaggerated response to the perceived issue. This should have ended the matter. This should have been the end of the inquiry, but instead the district court created an S applied just for Woodfox. Again, if the search is upheld, if the search itself procedure is upheld, which we feel it was. I mean, the court said it was. They didn't challenge the search procedure. Then you have to apply the Bell v. Walfrush analysis to whether it was reasonable to exempt Woodfox from a uniform search.  Which are mostly common sense as to why you can't do an S applied search. It has to be consistent. You can't have people, you can't have the guard going down the tier and saying, well, how old are you? Let me check my records. And when was your last disciplinary? You can't have that. It's a uniform search. It has to be applied consistently. The expert also pointed out that if you had a tier of 15 inmates and one of them was exempt from strip searches, then guess what? That's the guy who's going to end up with all the contraband. He's going to carry it for everybody else. They call it a mule. And the common sense is that in a system like that, there's going to be tremendously discordant. Did Brady end up holding a hearing on the jurisdictional? I know he intended to. Was there a hearing in the end? On the jurisdiction? On the jurisdictional issue that he raised and took briefing on. He took briefs on the jurisdictional issue. There was no evidence ever taken. There was no hearing. There was no attorney argument even? I don't believe there was. What happened is we showed up for a preliminary. He denied a temporary restraining order and said for a hearing. But then he realized that there was no motion for preliminary injunction. And so he took that under advisement and directed the parties to brief that. And then he ruled on that and said, I have jurisdiction, so now we're going to go forward with the hearing. And of course, there was a hearing on the preliminary injunction itself. In the end, there was no attorney argument in front of Brady on the Haspel issue and the preclusion? I don't believe so. I'm sure my opposing counsel will correct me if I'm wrong, or I'll find out. Thank you. Thank you, Mr. Geraghty. Ms. Kempel. Good morning, your honors. May it please the court, Katherine Kempel for Albert Woodfox. Before I engage with some of the other issues before us, I'd like to step back and just provide a little bit of context for what we're talking about. If the court grants this appeal, and if trial in the underlying litigation doesn't commence for, let's say, a year from today's date, Mr. Woodfox would have to endure hundreds and perhaps more than 1,000 strip searches between today's date and the first day of trial in the underlying litigation. And it was in that context that the district court made a series of factual findings that necessarily drove his decision below. And in so acting, enjoined the kind of egregious harm that's related to Mr. Woodfox's underlying claims, and a rise in the course of him litigating those claims before the court could actually deal with Mr. Woodfox's underlying constitutional challenges to the propriety of his being held in solitary confinement for more than four years. Why didn't you go into Louisiana court? Mr. Woodfox could have gone to Louisiana court, but I don't believe that he was compelled to go to Louisiana court. Why not, when the court has continuing jurisdiction? I think that there are a range of reasons why the consent decree does not act in quite the blunt way that the state has argued. Let me just put this to you for background and context. The state of Texas was under a very far-reaching prison consent decree for over 20 years. And it wasn't long into the enforcement of that consent decree that this court held, and I'm sorry I can't cite you the case, but this court did hold that prisoners were not allowed to file separate 1983 suits to get around the conditions of confinement consent decree. What do you think this court would have done if some prisoner chose to go into state court with a constitutional claim about prison conditions and ignore the federal consent decree? We would have slapped that down immediately because the federal court had continuing jurisdiction over the claims covered thereby. The circumstances are different in a few key ways. First of all, the policy that was at issue in the 1978 litigation as a result of the consent decree was changed and taken off the books, essentially. The policy that's at issue here today did not enter the books until three decades later in 2008, and that testimony is in the record. It resumed certain strip search policies that had been applied before. If Mr. Woodfox didn't like the reinstituted policy, he could have gone back into the state court and said this is a violation of the consent decree, which has never been abrogated or changed. He could have, but the state would like to have its cake and eat it, too. They would like Mr. Woodfox to be bound by this consent decree, but not for itself to be bound by it. But you can argue that the state is in contempt. So it seems to me that's a very potent remedy if, in fact, the state's new policy was contravening the old consent decree and they're well aware of the old consent decree. There's also state law that suggests, though, that for preclusive effect to that settlement to be applied, the intent of both parties to be bound by it has to be clear and unequivocally proven, and that's a burden that the state bore. And what the district court found was that Mr. Woodfox testified he understood the consent decree to be something that applied to the policy then and that bound the state, but did not bar him and his ability to bring federal question, constitutional claims in federal court. Frankly, I've never heard of a party to litigation being able to voice his subjective view of the binding nature of that litigation. That's a question of law for the court. The court looked at the controlling Louisiana state law at the time that the consent decree was entered, and that was Rivett v. State Farm, to determine whether or how preclusive effect might be applied. There are other factors that... There can't... I don't think there can be other factors, though, right? It's got to be three identities. You're not disputing it's the same parties. We're not disputing that it's the same parties. And the thing being asked for is to stop the strip searches. That was identical. I don't think that there's identities in other ways. I don't think... It's not the same policy. It's also not the same kind of relief, and it's not the same kind of challenge. The challenge in the 1970s had to do with class-wide relief, but also had to do with the facial constitutionality of the policy, not an as-applied challenge. So you have a very different set of circumstances. And, Mr... I thought the inquiry is, is it the same cause of action? That is to say, is it the same ground? Fourth Amendment violation. What's being asked for? No strip searches or none like this. Then you get a consent decree, entered as a final judgment on exactly that. And it seemed to me the district court just was saying, well, they didn't intend to foreclose future litigation, say, in federal court. But the full credit, it works both ways. I think the point made is, if you've got a consent decree in federal court, Louisiana courts are obligated to follow it. And flip side is here. So he won. He won decisively below. But then he isn't following the exact reciprocal concessions that he obtained to go back and have that enforced in the court. It just seems to me a classic case of preclusion. Mr. Woodfox's claim is somewhat more... ..complicated than a simple, straightforward Fourth Amendment challenge. Because Mr. Woodfox's claim is inextricably linked to his underlying constitutionality... ..challenge to the constitutionality of his confinement in CCR. What's your best case for that? My best case that it's inextricably linked? The Fourth Amendment is irrespective of persons and backgrounds and subjective cases. So there's a good argument that it's not even... ..that your Fourth Amendment claim isn't even raised in this case to begin with, in my view. But, you know, again, Mr Woodfox may have... I know he has a... I say nothing about other aspects of his confinement or his convictions or nothing at all, but I've never heard of a Fourth Amendment violation turning on, quote, other factors than the nature of the particular search receiver. Well, a few...quite a few things on that. And I'll try and go through them quickly. Well, cite some case law, OK? First of all, factually, the expert conceded here that Mr Woodfox was being subjected to these searches because of his classification and where he was housed. He also conceded that the strip searches, the visual body cavity searches that are at issue here, were being conducted on individuals like Mr Woodfox who were in CCR, despite the fact that there are inmates with greater opportunities to pass and receive contraband that are not subject to these visual body cavity searches. Mr Woodfox's challenge, and here's where we get back to the inextricably linked point, Mr Woodfox's challenge, and an as-applied challenge, which is something that this court has recognized as being a proper way to think about visual body cavity searches, Mr Woodfox's as-applied challenge flows from the fact that he should not be in solitary confinement and that that placement in solitary confinement and him being subjected to all of the deprivations that flow from solitary confinement is unconstitutional. There's due process claims, but there's also claims like his First Amendment claim that the reason that he's being held in solitary confinement is because of his political beliefs and speech. I believe one of the state's corrections officers referred to it as his Black Pantherism. You're not arguing that those penological issues, whatever they are, is something we're supposed to take into account in terms of deciding whether there's jurisdiction here in the range of questions, are you? I am, because the district court began his opinion in contextualizing his opinion by saying that there's a long and storied history in this case. But nobody disputes that. I mean, nobody disputes that. I mean, it's not a fairness inquiry where we are, you know, at the level we are. I mean, interposed is to say I could somewhat follow that if what the consent decree dealt with was other issues and not searches or whatever to say, well, it wasn't meant that that was to cover whatever it is. It still might be bound, but, you know, at least maybe an argument that, you know, that was strip searches, this is visitation privileges or something, I mean, just for the sake of argument. I mean, it's still dicey as to whether it's meant to be bound, but it's difficult for me to see how we can make the argument that when the other decree dealt with strip searches and he was the named plaintiff, not just in the et al. category, well, he wasn't in the prison at the time that the consent decree was effected. He went into the prison afterwards, so it doesn't cover him or whatever. But he's the named plaintiff. It deals with strip searches. So how does it—what's the case law? I mean, we're pinning you down because we know what the facts are. You've got to come back with some cases that support, you know, what happened and not just that Judge Brady thought it was the right thing to do to say why there is jurisdiction here. And jurisdiction is the threshold question, whether raised by anybody or not, is where we are, not the expert's testimony about the penological issues there. You've got to hone in. A few things. First of all, original jurisdiction over federal questions is foundational to the relationship between federal courts and state courts under Section 1331. With respect to the case law, for example, Haspel and Jackson, which they always cite, those are both cases where they're attempting to enforce the state consent decree. And so those are wildly distinguishable because that's not what's happening here. Mr. Woodfox's relief truly turns on the ultimate resolution of the underlying litigation. It turns on whether or not he should be in CCR. You could argue to Judge Brady to push your case to trial. We would love to be able to get to trial. The reason we haven't gotten to trial is because the state has, over the years, enacted various legal challenges and otherwise to delay getting to trial.  Mr. Woodfox would love nothing more than to have his day in court come as soon as possible. But when you look at the other case law, if you look at Brady v. Younger and the abstention doctrine that applies there, that is applied narrowly, and it only applies when there's pending and ongoing state court proceedings. And I just don't believe that that applies here. I also would just note that if, in fact, the problem is that Mr. Woodfox has not specifically pled a Fourth Amendment violation in his complaint, that the purpose of a pleading requirement is a procedural one. It's notice. The federal rules of civil procedure widely allow amendment of the complaint. It can be amended even after trial if necessary. But you didn't bother to do that. Well, as the district court found, he believed that was needlessly technical. We certainly could go and amend the complaint to now add a Fourth Amendment violation because the state, for the first time in 2013, began stripping Mr. Woodfox and other individuals in CCR, but that was not something that was happening prior to 2013. It was not something that was happening that would have needed to be amended in sooner, and I don't think that the pleading requirements are construed by this court or others to require parties to constantly amend their complaint when the actors involved are doing new or different things. Instead, I think that the pleading requirements really look at notice, and there can be no argument that the state wasn't on notice about this being a potential constitutional violation. Moreover, there was actual exhaustion of the administrative requirements that Mr. Woodfox needed to go through in order to put them on notice of his concerns and his complaints. And I think that one of the other things to keep in mind is this is, again, precisely why a mechanism like preliminary injunctions are in place. If you think about how a preliminary injunction is used, and I give you an example of somebody who is part of a case that challenges an assertion of eminent domain and a seizure of lands, and if during the pendency of that case the state were to move forward and were to attempt to cut down trees on a plot of land that were particularly important to one individual in the case but that hadn't been specifically pled in the complaint, a preliminary injunction might nonetheless be appropriate to simply enjoin that harm from accruing while the court considered the pending litigation. And that's really what's happening here. Mr. Woodfox could assert a separate Fourth Amendment claim, but I also think that his challenge to the propriety and the constitutionality of these strip searches is really tied to his challenge about the constitutionality of him being in solitary confinement at all. Were he not in solitary confinement? No, but I think the answer to that is he is not treated any differently than any of the other 1,200 inmates. Those other 1,200 inmates? But for his other litigation, they're all subject to this strip search policy now, are they not? Not all of them. I'm not sure on the numbers exactly. That was what counsel represented, so I don't want to get into a side argument, but a whole bunch of them are subject to this policy. A whole bunch. And therefore, they could all take advantage of that consent decree that still exists in state court. The fact that a remedy might exist in state court and, in fact, does exist in state court. It's called contempt of court, which is a really serious thing to charge against state officials. It is a serious thing to charge against state officials. However, Mr. Woodfox's challenge is not a purely separately freestanding Fourth Amendment complaint. It's separate and apart from his underlying. Well, as to these, when he first filed the grievance at Wade, it was introducing the consent decree. He did. He did. And then when you first get in federal district court, it's offering the consent decree. And then, right? It was one of the arguments introduced. That's correct. So it seems like the consent decree really is the central thing. It makes sense. I mean, what's being alleged and what's being asked for were precisely resolved there. And to say, well, it would be faster to keep it in federal court, even putting aside full faith and credit, I don't see why. If it's already been resolved in state court and it's a contempt issue, it seems like you won below. And you've got rules that you claim they're violating. Why doesn't he go seek to enforce that? He could, but that question he would then be asking the state court, were he to frame it exactly as he did here, would be whether or not those searches are constitutional as applied to him if he shouldn't be in solitary confinement in the first place. And then he's asking a state court to look at precisely the issues that a federal court is already looking at and has been looking at for nearly 14 years. So you, I think, create more jurisdictional problems than you solve by going that route. With due respect, I think you're creating a jurisdictional problem when you have a complete remedy in state court. You still have your lawsuit going in federal court. I'm not saying that that doesn't exist. But this was a freestanding motion for temporary injunction. It was brought not as a freestanding claim. And again, if the problem is that he hasn't articulated it. You have yet to cite any case at all on your inextricably linked claim. It's just not within the normal bounds of federal civil procedure. The inextricably linked point goes to the facts and circumstances giving rise to his searches, which Bell v. Wolfish requires a court to consider. So you could be up here, in your view, because Judge Brady said, could have held, according to what your theory is, that Mr. Woodfox has been confined unreasonably and in violation of his due process rights. And therefore, and for that reason alone, I'm going to exempt him from the strip search policy. Is that possible? Yes. Did you ask him to do that? I think it would have been. Did you ask him to do that? We did not ask for that specific finding. Of course you didn't, because that's not the law. The law is not that a person is treated differently in confinement because of his particular background. The law is whether he's subjected to an unreasonable search based on the classification of prisoner that he is. The law is that as-applied challenges are not only consistent with, but perhaps now even more consistent than a broader challenge after the PLRA. Moreover, this circuit has held in cases like Watt and Mays that as-applied challenges are the proper and, in fact, most jurisprudentially sound and prudent approach to looking at things like strip search policies. Because the courts prefer that inmates bring challenges like this in narrow circumstances, and recognizing that the as-applied approach is the best way to go according to this court and Congress and its intent in the PLRA. Are you proceeding in both courts at the same time? Then I think— Is that your position? My— Are you asking the state court to find the state in contempt, and yet at the same time asking Judge Brady to come to the same conclusion? I think then you risk inconsistent decisions. But that's why the merger doctrine exists if Haspel is—well, Haspel is controlling, but whatever its basis. But that's also why you have raised judicata and full faith and credit, to avoid exactly that possibility of inconsistent rulings. Haspel isn't the same circumstances, and it's not applicable. It should be narrowly applied because Haspel has to do with the enforcement— Your first answer is yes, we would then possibly have inconsistent rulings on this case. I think you risk that. I do think you risk that. If you have two simultaneous courts looking at the question of whether Mr. Woodcock has an as-applied challenge— And yet you're saying the law allows you to pursue both those inconsistencies at the same time? No, I think the proper jurisdiction is the federal court that's been looking at this question. The only jurisdiction, then, is federal court now? Somehow you've now—the state can't go back into state court to enforce its— If this court rules that it's not proper to have this question looked at in the federal courts, then there's no risk of inconsistent decisions, and Mr. Woodcocks or the state could go to state court. I would like to note that the state, in fact, did not take that remedy. The state did not move to terminate nor to modify the underlying consent decree. It simply began implementing these strip searches based on a policy it put on the books 30 years after the consent decree was decided. So it's a different policy, and they put it—they began implementing it selectively. They implemented it only at Wade, where Mr. Woodcocks happens to be. So I would just note that. One last question before you leave. All I read in Judge Brady's ruling, he said at the conclusion of the hearing, the court ordered both sides to file supplemental briefs addressing whether the court could enforce the state-issued consent decree, which resulted from an earlier lawsuit. And he just dropped a footnote that said, after reviewing the briefs, the court declines to enforce or adopt the state-issued consent decree. I mean, that's all I see here. Was there any more that I'm missing with respect? I mean, it doesn't even seem that this was discussed. Well, let me just ask it this way. Is the argument you made to us this morning about why the state-issued consent decree doesn't deal with it, is that the same argument Mr. Woodcocks, you as counsel, made to Judge Brady? It is. And if I can answer your question, there was, in fact, extensive briefing on these jurisdictional issues, both before the hearing and after. There were, in fact, oral arguments, I believe, on this issue. The hearing was supposed to occur on an earlier date, the evidentiary hearing, and I believe that oral arguments were held then. And I know they were also held over telephonically much earlier in this sort of dispute about the propriety of how the court could proceed in non-jurisdictional issues. And there are multiple entries in the record where the court actually issued specific rulings about the consent decree, whether or not it was considering enforcement of the dissent decree as a grounds for moving forward, as opposed to evidence of the likelihood of success. Well, I ask the question because, I mean, the reasons don't advert to any law. It doesn't cite any law as a basis for declining. It's just a footnote, and it's at the end of the opinion. It just drops a footnote. So my question was whether there was some law that Mr. Woodcocks and counsel relied on for the proposition you argued today, which we otherwise don't know about. But I have your answer. I'm just looking at one line footnote, and that's all. There isn't the rest. You've given me the answer, and I'll ask the State the same question. Thank you. Okay, thank you. Appreciate it. Back to you, Mr. Curry. Why don't you just start with my question? In answering your question, the answer is no. There was no oral argument. If you look at our record excerpts, tab five of the mandatory contents, the first paragraph says, oral argument is not necessary in the first paragraph near the end. Now, I would like to think that it's because we pointed out to him that there was a final State court judgment in place, and it provided that it was only enforceable in that court. But you're right. He never says that you're right. That could only be enforced in State court. He just drops a footnote. It doesn't drop a footnote. It's in the text of the first paragraph. Oral argument is not necessary. In answer to the earlier question, Judge Brady took the case over from Judge Ralph Tyson. Judge Ralph Tyson was not the judge in 2000. I don't know who it was in 2000, perhaps Palazzolo then as well. Very briefly, the reinstituted, we've heard about the 2008 reinstituted policy and how it was different from, it changed the law somehow. But, in fact, the reinstituted policy from 2008 is in the suit record. I can't give you an immediate cite to the record cite. I think it's in the record excerpts, but I'm not sure. The reinstituted policy is in the record. So is the consent agreement from 1978 State court. If you put them side by side, they're awfully similar. In all relevant respects to what's at issue before us today, they are identical. I think there's more reasonable suspicion requirement in the earlier consent decree. That may be. I can't comment. I'm not sufficiently. That would be a significant thing, arguably. Right. Right. And now it was suggested that, again, today that they're not really trying to, in this filing in the district court here, they're not really trying to enforce the State court judgment. I can only urge the court to look at the record on appeal beginning at 7108 to 38. That is where they have their temporary restraining order and supporting memorandum. It's all about enforcing that State court judgment. I mean, it says, you know, they even make the allegation that we waited until the State court judge had died. Then we came in and tried to undercut his judgment. And it goes on and on about, you know, it's an enforceable judgment and the State's trying to get out of it. We're not trying to get out of it. We're spying, and it should be the vehicle for reviewing this. If the court has any other questions, I'd be happy to entertain them. Otherwise, I have nothing further. All right. Thank you. Thank you. Mr. Curry, thank you, both sides, for your briefing and argument in the case. It will be submitted. This completes the oral arguments for the panel for this week. Those along with the non-oral argument will be submitted, and the panel will stand adjourned.